Washington, J.,
 

 after stating the facts of the case, delivered the following opinion
 

 of the court: — After the decision of this court in the cases of
 
 The JRapid
 
 and of
 
 The Ship Alexander,
 
 it is not to be contended, that the sailing with a cargo, on freight, from St. Petersburg to London, after a full knowledge of the war, did not amount to such a trading with the enemy as to have subjected both the vessel and cargo to condemnation as prize of war, had she been captured whilst proceeding on that voyage. The alleged necessity of undertaking that voyage, to enable the master, out of the freight, to discharge his expenses at St. Petersburg, countenanced, as the master declares, by the opinion of our minister at St. Petersburg, that by undertaking such a voyage he would violate no law of the United States, although these considerations, if founded in truth, present a case of peculiar hardship, yet they afford no legal excuse which it is competent to this court to admit as the basis of its decision. See
 
 The Hoop,
 
 1 Rob. 167 ;
 
 Potts
 
 v.
 
 Bell,
 
 8 T. R. 554.
 

 The counsel for the claimants seemed to be aware of the insufficiency of this ground, and applied their strength to show that the vessel was not taken
 
 in delicto,
 
 having finished the offensive voyage in which she was engaged, at London, and being captured on her return home and in ballast. It is not denied, that if she be taken during the same voyage in which the offence was committed, though after it was committed, she is considered as being still
 
 in delicto,
 
 and subject to confiscation ; but it is contended, that her voyage ended at London ; and that she was, on her return, embarked on a new voyage. This position is directly contrary to the facts in the. case. The voyage was an entire one from the United States to England, *4551 ^ence the north of *Europe, and thence directly or indirectly to J the United States. Even admit that the outward and homeward voyages could be separated, so as to render them two distinct voyages, which is not conceded, still it cannot be denied, that the
 
 termini
 
 of the homeward voyage were St. Petersburg and the United States. The continuity of such.
 
 *288
 
 a voyage cannot be broken by voluntary deviation of the master, for the purpose of carrying on an intermediate trade. That the going from St. Petersburg to London was not undertaken as a new voyage, is admitted by the claimants, who allege that it was undertaken as subsidiary to their voyage to the United States. It was, in short, a voyage from St. Petersburg to the United States, by the way of London ; and consequently, the vessel, during any part of that voyage, if seized for conduct subjecting her to confiscation as prize of war, was seized
 
 in delicto.
 

 Another objection relied upon by the claimants, is, that this vessel was captured within the territorial limits of the United States. The fact upon which this objection is raised is not cleai-ly established one way or the other. But admit it to be as contended for by the claimants, the law is nevertheless against them. The commission granted to privateers authorizes them to seize and take any British vessels found within the jurisdictional limits of the United States, or elsewhere on the high seas, and to bring them in for adjudication ; and also to detain, seize and take all vessels and effects, to whomsoever belonging, which shall be liable thereto according to the law of nations and the rights of the United States, as prize of war. The first instructions given by the president to the private armed vessels of the United States, define the high seas, referred to in the commission, to extend to low-water mark, with the exception of the space of one league, or three miles, from the shore of countries at peace with Great Britain or the United States. The general expressions of the commission, explained by these instructions, and containing no exception but in relation to friendly powers, prove incontestibly, that all captures as prize of war may lawfully be made within the territorial limits of the United States, at any place below low-water mark.
 

 The court is also of opinion, that there is no weight *in another ^ objection made by the claimants, that this vessel was on her way and *- near to an American port, at the time she was captured. The right of the captor to the property which he may seize as prize of war, is derived under his commission, which is general and unqualified as to place and circumstances, and not from any peculiar merit which he may claim in any particular case. It is not for him to know whether a vessel which has offended against the law of nations, and is apparently destined to a port of the United States, will certainly enter the port: and certainly he is bound by no law to forego the opportunity which chance or his own vigilance may have presented to him to acquire property which, under his commission, he is authorized to appropriate to himself. ■
 

 Decree affirmed.