STATE of South Dakota, Plaintiff
and Appellee,

v.

Kathy BOETTCHER, Defendant
and Appellant.

No. 16385.

Supreme Court of South Dakota.

Considered on Briefs March 24, 1989.

Decided June 28, 1989.

Diane Patrick, Asst. Atty. Gen., on the brief, Roger A. Tellinghuisen, Atty. Gen., Pierre, Roger W. Ellyson, Jr., Codington County State's Atty., Watertown, for plaintiff and appellee.

Rita D. Haverly of Hagen & Wilka, P.C., Sioux Falls, for defendant and appellant.

SABERS, Justice.

This is a discretionary appeal from a pretrial order suppressing evidence of Kathy Boettcher's justification/necessity defense in her prosecution for burglary, assault and childnapping. We reverse.

## FACTS

This matter arises out of an ongoing custody dispute over Boettcher's four-year-old daughter, H.T. Boettcher and her husband were divorced in early 1986. Custody of H.T. was awarded to Jack and Millie Thomas, the child's paternal grandparents. Several proceedings ensued in which Boettcher attempted to obtain custody of H.T. In each instance custody was continued with the Thomases and Boettcher was granted only limited visitation rights.

On January 18, 1988, Boettcher allegedly entered the Thomas home, administered a severe beating to Millie Thomas and forcefully took H.T. Boettcher was subsequently charged with one count each of first degree burglary, simple assault, aggravated assault and taking of an unmarried minor child by a parent.

Prior to trial, Boettcher served state with a notice of intent to use statements at trial. The statements were related to Boettcher's justification/necessity defense that she took H.T. because she thought the child was being sexually abused by her grandfather, Jack Thomas. The statements and several offers of proof made by Boettcher during the trial court proceedings reveal that:

1) On various occasions in late 1985 and 1986 Boettcher and her mother observed a redness in H.T.'s vaginal area;

2) On approaching Millie Thomas about the redness, she excused it as diaper rash;

3) During a visit by H.T. in October 1986, H.T. stated to Boettcher, "Papa no hurt potty";

4) On one occasion when Boettcher's aunt was watching H.T., H.T. refused to go to the bathroom stating, "No, papa come";

5) H.T. referred to her grandfather, Jack Thomas, as "Papa";

6) After visiting Boettcher, H.T. would become hysterical and fearful of returning to the Thomas home;

7) In late 1986 or early 1987 Boettcher had a conversation with her cousin during which her cousin expressed that she recalled a conversation from years past in which Jack Thomas was implicated in a sexual contact with two young girls;

8) The foregoing caused Boettcher to suspect that H.T. was being sexually abused by her grandfather, Jack Thomas;

9) Boettcher made unsuccessful contacts with the Department of Social Services, the States Attorney, a U.S. Senator and several news agencies for assistance regarding the suspected sexual abuse of H.T.;

10) In 1987 Boettcher again attempted to obtain custody of H.T., which attempt was denied in December 1987.

Following Boettcher's notice of intent to use statements, state filed a motion in limine to preclude admission of the above evidence. The trial court granted state's motion. Thus, on June 22, 1988, pursuant to a plea bargain, Boettcher pled guilty to first degree burglary and state dismissed the balance of the charges against her. However, after issuance of this court's decision in *State v. Rome*, 426 N.W.2d 19 (S.D.1988) holding that the justification/necessity defense is available in prosecutions under SDCL 22–19–9 (taking of unmarried minor child by parent), the trial court permitted Boettcher to withdraw her guilty plea. Nevertheless, the trial court ultimately entered findings of fact, conclusions of law and an order precluding admission of the above evidence finding that it did not support a justification/necessity defense in this case. Boettcher petitioned for permission to take an intermediate appeal from the trial court's order, which request was granted by this court.

### ISSUE

Whether the trial court erred in precluding presentation of evidence relating to Boettcher's justification/necessity defense?

The justification/necessity defense arises from SDCL 22–5–1:

A person may not be convicted of a crime based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been lawfully unable to resist.

This court recently held in *State v. Rome*, 426 N.W.2d 19 (S.D.1988) that the justification/necessity defense provided for by this section is available in prosecutions under SDCL 22–19–9 (taking of unmarried minor child by parent).

The test for when a justification/necessity defense under SDCL 22–5–1 is properly submissible to the trier of fact is contained in *State v. Miller*, 313 N.W.2d 460, 462 (S.D.1981):

[T]he defense of necessity [is] properly raised "when the offered evidence, if believed by the jury, would support a finding *by them* that the offense ... was justified by a reasonable fear of death or bodily harm *so imminent or emergent* that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the public injury arising from the offense committed ..." (emphasis added).

*Citing State v. Baker*, 598 S.W.2d 540, 546 (Mo.App.1980). The essential element permitting the submission of the defense to the jury is a reasonable fear of death or bodily harm imminent or emergent. *State v. Watkins*, 316 N.W.2d 627 (S.D.1982)

In this instance the trial court reasoned that the events causing Boettcher to suspect that H.T. was being sexually abused were too remote from the childnapping on January 18, 1988, to support submission of her justification/necessity defense to the jury. In other words, the trial court found that Boettcher failed to show an imminent or emergent danger of bodily harm to H.T. We disagree.

At the outset it is observed that this case does not address a defendant's fear of an isolated instance of potential bodily harm to another. Boettcher suspected an ongoing pattern of sexual abuse of H.T. by her grandfather, Jack Thomas. No doubt in

Boettcher's view, so long as H.T. remained in the Thomas home she was in "imminent and emergent" danger of bodily harm.

Additionally, the various offers of proof made by Boettcher show a chain of events from 1986 through 1987 all of which could have contributed to her suspicions that H.T. was being sexually abused. These include the redness in H.T.'s vaginal area; H.T.'s fear of going to the bathroom and simultaneous reference to her grandfather; H.T.'s fears of returning to the Thomas home after visiting Boettcher; and, rumors implicating Jack Thomas in previous sexual contacts with minor girls. The offers of proof further show a history of futile complaints by Boettcher to the authorities concerning her fears of sexual abuse of H.T. These complaints included contacts with both state and federal authorities and even the news media. The record further shows a final legal attempt by Boettcher to remove H.T. from the Thomas home through a change in custody proceeding. This change in custody was denied only twenty days before the alleged actions of Boettcher leading to this prosecution.*

The issue in this appeal is not the reasonableness of Boettcher's concerns or the credibility of the foregoing evidence. The issue is whether this evidence, *if believed by the jury*, would show that Boettcher had a fear of imminent or emergent bodily harm to H.T. Clearly if the evidence presented at trial supports the offers of proof it does. The reasonableness of Boettcher's fears and ultimately the reasonableness of her actions in view of her fears and in light of a justification/necessity defense are matters for determination by the jury and not the trial court. *Miller, supra.*

Reversed.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and MILLER, J., dissent.

---

* Chief Justice Wuest's dissent focuses on this custody dispute apparently concluding that it should have laid Boettcher's concerns to rest. It is respectfully submitted that to a parent who fears an ongoing danger to her child, no legal proceeding will allay those fears so long as the

WUEST, Chief Justice (dissenting).

I still adhere to my dissent in *State v. Rome*, 426 N.W.2d 19 (S.D.1988). This case, however, may be distinguished from *Rome*. In order to assert a justification/necessity defense, the bodily harm must be imminent or emergent.

In the present case, defendant was charged not only with childnapping but also with brutally beating the child's custodial grandmother. *Defendant knew about the abuse allegations for over two years and had unsuccessfully litigated this issue at the custody hearing. These allegations were rejected by the civil trial court and custody was continued in the grandparents.* Twenty days following the trial court's December 29, 1987, memorandum decision which continued custody in Jack and Millie Thomas, defendant allegedly beat the custodial grandmother and took the child. Herein, the trial court properly held an offer of proof hearing, considered evidence relating to the justification/necessity defense, and held that although such a defense may be allowed in certain cases, considering the circumstances involved, it was inapplicable in this proceeding.

At the offer of proof hearing, defendant had the burden of showing whether the justification/necessity defense was appropriate in light of the facts. *See State v. Walton*, 311 N.W.2d 113, 115 (Iowa 1981); *State v. Reese*, 272 N.W.2d 863, 867 (Iowa 1978). When the requirements of this defense are not addressed, the trial court is not obligated to submit the issue to the trier of fact. *See United States v. Jackson*, 838 F.2d 301, 302 (8th Cir.1988); *State v. Walton*, 311 N.W.2d 113, 115 (Iowa 1981) (*citing United States v. Campbell*, 609 F.2d 922, 924 (8th Cir.1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980)).

Defendant's evidence presented at the offer of proof hearing discloses that the

---

parent continues to perceive the danger. The decision in this custody proceeding can clearly be viewed as the "final straw" inducing Boettcher, frustrated with the legal system, to exercise a self-help remedy.

defense of necessity/justification was not available to her since the essential requirements of the defense had not been met. This court, in *State v. Miller*, 313 N.W.2d 460 (S.D.1981), adopted the rationale previously set forth in *State v. Baker*, 598 S.W.2d 540 (Mo.App.1980) and recognized that the defense of necessity should involve a consideration of the "circumstances surrounding the crime based upon a reasonable person standard." Citing *Baker*, we stated:

> [W]hen the offered evidence, if believed by the jury, would support a finding by them that the offense of escape was justified by a reasonable fear of death or bodily harm so imminent or emergent that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the public injury arising from the offense committed to avoid injury to the prisoner.

*Miller*, 313 N.W.2d at 462. Therefore, this court has adopted the following standard in considering the defense of necessity:

(1) whether bodily harm or death is imminent or emergent;

(2) whether reasonable fear exists of death or bodily harm; and

(3) whether a person with ordinary standards of intelligence or morality would think that the desirability of avoiding the imminent danger outweighs the offense committed.

This court has examined the *Miller* standard in both *State v. Watkins*, 316 N.W.2d 627 (S.D.1982) and *State v. Rich*, 417 N.W.2d 868 (S.D.1988). Within *Watkins*, a prosecution for escape, this court held that the threshold element in determining whether to permit submitting the defense of necessity to the jury is a reasonable fear of imminent or emergent death or bodily harm. Holding that imminent danger did not exist, we denied the use of the necessity defense and did not proceed to discuss the other, more subjective elements of this defense.

The defendant in this case should be denied the defense of necessity/justification since she did not meet the essential standards of the defense. I would affirm.

MILLER, Justice (dissenting).

I concurred in *State v. Rome* and continue to support its holding. I conclude, however, that the facts here are clearly distinguishable from those in *Rome.*

As was so clearly stated by this court in *State v. Miller*, 313 N.W.2d 460 (S.D.1981) (which was so heavily relied upon by us in *Rome* and by the majority here) the justification/necessity defense is properly raised *only* when the tendered evidence would support a jury finding that the offense was justified by a *reasonable* fear of death or bodily harm that is *imminent or emergent* according to ordinary standards of intelligence and morality. In his dissent, the Chief Justice has accurately set forth the standards which this court has adopted in considering the defense of necessity. These standards have not been met here. The evidence sought to be introduced by defendant was simply too remote.[1]

Even if the majority is correct in its holding that the justification/necessity defense is proper in the childnapping charge, its rationale and logic totally fails when applying such defense to the aggravated

---

**1.** I feel compelled to note that the trial court in its findings of fact and conclusions of law properly distinguished this case from *Rome.* The trial court specifically concluded, *inter alia:* that "... the custodial grandfather's undated, unspecified, and unconfirmed contact with two female children was relayed to Defendant approximately one (1) year prior to the actions giving rise to the crime" (Conclusion 6); "[T]he redness in the vaginal area was observed some fifteen (15) months prior to these actions. Additionally, (the child) had a history of mild to severe diaper rash." (Conclusion 7); "[A] divorce custody investigation by the Department of Court Services in October 1987, and a Department of Social Services Report of July, 1987, investigated possible sexual abuse of (the child); noted Defendant's concerns; but identified the perpetrator as the Defendant's brother." (Conclusion 8); "[T]o permit the Defendant to use justification/necessity as a defense in this case, under the aforementioned circumstances, would be sanctioning every noncustodial parent a means of relitigating a custody determination before a jury. It would render meaningless the child custody determinations of the trial courts." (Conclusion 9)

assault charge. Defendant presented no offer of proof testimony directly relating to the aggravated assault charge. Therefore, it is necessary for us to examine other testimonial records to ascertain whether the proposed defense is available.[2]

There were absolutely no facts submitted by defendant to the trial court which would justify the use of the justification/necessity defense on aggravated assault. *Miller, supra; see also State v. Watkins*, 316 N.W.2d 627 (S.D.1982).

---

**2.** An examination of the preliminary hearing transcript indicates that defendant went to the grandparents' farm house and gained access to the entryway under the guise of giving the child a Christmas gift. Defendant then allegedly grabbed the grandmother around the neck and sprayed some substance into her face. A struggle ensued in which defendant allegedly struck the grandmother, and additionally kneed her in the stomach and hit her on the head with a bottle. Defendant allegedly attempted to tie up the grandmother with duct tape and tried to choke her with a telephone cord. Defendant was alleged to have stated several times that she was going to "get rid" of the grandmother.